RENDERED: DECEMBER 18, 2014
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2013-SC-000588-MR

AARON BASHAM                                  APPELLANT

ON APPEAL FROM JEFFERSON CIRCUIT COURT

V.              HONORABLE FREDERIC J. COWAN, JUDGE
NO. 10-CR-003354

COMMONWEALTH OF KENTUCKY                   APPELLEE

**OPINION OF THE COURT BY JUSTICE NOBLE**

**<u>AFFIRMING</u>**

The Appellant, Aaron Basham, was convicted of first-degree rape, first-degree sexual abuse, and being a first-degree persistent felony offender. He was sentenced to life without the possibility of probation or parole for 25 years. On appeal, he challenges his convictions on two grounds: (1) that the trial court should not have excluded evidence that the alleged victim had been previously exposed to pornographic material on the internet, and (2) that the trial court should not have granted the Commonwealth's motion to strike a juror for cause over defense objection. Finding that Basham has failed to establish grounds for relief, this Court affirms his convictions and sentence.

## I. Background

Aaron Basham lived with a former co-worker and his family for several months in late 2007 and early 2008. The former co-worker's wife and three minor children—his step-daughter (then age 12), daughter (age 7), and infant

son[1]—resided at the home. Basham was asked to babysit the children on several occasions when the former co-worker and his wife had to work overlapping shifts and when they played bingo on Friday and Saturday nights. In February 2007, upon learning that Basham was a convicted sex offender,[2] the former co-worker forced Basham to move out of his house and have no further contact with his family. The former co-worker and his wife also questioned their daughters at that time, and both denied that Basham had ever inappropriately touched them.

On October 28, 2009, the former co-worker received a call from the teacher of his then eight-year-old daughter, Sally.[3] The teacher reported that Sally had said the word "sex" to another student and that when the teacher asked her if she knew what the word means, Sally had burst into tears and responded that something bad had happened to her and that she knew who had done it. Sally was then taken to Clark Memorial Hospital by her step-mother, reporting that she had been sexually abused by a man that had lived with the family two years earlier. According to the hospital's intake form, Sally had stated that "when my parents would leave and [Basham] would babysit us, he would make me get down on the couch and start having it with him," and that "he would make me pull down my pants and put his thing in me." No

---

[1] The former co-worker's wife was not the biological mother of his seven-year-old daughter and infant son.

[2] The jury was not presented with this information but, instead, only heard that the former co-worker had received some information that had made him become suspicious of Basham.

[3] Consistent with this Court's present practice, "Sally" is a pseudonym employed in this opinion to protect the minor victim's true identity.

2

physical examination was conducted at that time due to the remoteness of the allegation.

Rebecca League from the Child Advocacy Center conducted a forensic interview of Sally on November 16, 2009. According to League's notes, Sally was reticent to discuss the details of the abuse, but Sally did tell the interviewer that she had pulled down her own pants, that Basham had kissed her on her mouth and chest, that he had touched her on her chest and butt with his hands, and that she had gotten on top of him. She stated that Basham's penis had had "gray spots" on it that had wiped off on her, were still on her private, and bothered her when she peed. Upon subsequent physical examination, Sally's genitalia appeared normal and did not exhibit any gray spots.

Sally was 12 years old when she testified at trial on May 16, 2013. She testified that Basham had lived with her family when she was seven years old. Using diagrams, she circled the male and female "privates." She testified that Basham had removed her clothes, laid on his back on the couch in the living room, and had her get on top of him. She testified that his private part had gone inside her private part and that it hurt, and that Basham had also touched her private with his hand. She thought this had also happened once in her sister's room when her sister was not home.

The jury found Basham guilty of rape in the first degree, KRS 510.040(1), sexual abuse in the first degree, KRS 510.110(1)(b)(ii), and of being a persistent felony offender in the first degree, KRS 532.080. He was sentenced to life without the possibility of probation or parole for twenty-five years and now

appeals to this Court as a matter of right. *See* Ky. Const. § 110(2)(b). Additional facts will be developed as needed below.

## II. Analysis

### A. The trial court did not abuse its discretion in excluding evidence that the victim had been exposed to allegedly pornographic websites.

Basham first claims that the trial judge erred in barring him from introducing evidence that Sally had previously been exposed to sexually explicit material on the internet. Defense counsel sought to introduce this evidence during cross-examination of both Sally and her father.[4] The Commonwealth objected, arguing that this was evidence of prior sexual behavior or sexual predisposition and thus subject to the "rape shield" provisions of KRE 412, and that the defense had failed to comply with the rule's requirement that a written motion be filed at least 14 days before trial. *See* KRE 412(c).[5] The trial court twice sustained the Commonwealth's objection.[6]

---

[4] Sally apparently reported during an interview that she had accidently clicked on some pornographic websites on the internet and afterward had told her father about it.

[5] KRE 412(c) provides the procedure for determining the admissibility of evidence proffered under an exception to the rape shield under subsection (b). It provides, in pertinent part, that a party intending to offer such evidence must "file a written motion at least fourteen (14) days before trial specifically describing the evidence and stating the purpose for which it is offered unless the court, for good cause requires a different time for filing or permits filing during trial." KRE 412(c)(2) further mandates that the trial court "conduct a hearing in camera and afford the victim and the parties the right to attend and be heard" before evidence may be admitted under this rule.

[6] When the defense first offered this evidence during its cross-examination of Sally's father, the trial court concluded that it was KRE 412 evidence of specific instances of sexual behavior by the victim and sustained the Commonwealth's objection on the grounds that the defense had failed to provide notice of its intention to introduce the evidence as required by KRE 412(c). When defense counsel again sought to introduce the evidence during its cross-examination of Sally the following day, the trial judge was more amenable to allowing the evidence but ultimately chose

4

But Basham argued then and now that the proposed evidence of Sally's incidental exposure to pornographic websites is neither "evidence offered to prove that [Sally] engaged in other sexual behavior," KRE 412(a)(1), nor "evidence offered to prove [Sally]'s sexual predisposition," KRE 412(a)(2). He contends that this is instead alternative-source-of-knowledge evidence offered to rebut the "sexual innocence inference,"[7] which makes this evidence a defense.

The inference is that the jury would inevitably presume that given her young age, Sally would not have known about the sexual behaviors she described in her allegations unless Basham had in fact abused her. Basham argued that since Sally had previously been exposed to sexually explicit websites, those websites were the source of her knowledge about the sexual

---

to reaffirm his earlier decision to exclude the evidence because nothing was known about the websites, what the victim saw or did not see, or how she would respond to questioning about them.

[7] For a comprehensive discussion of the "sexual innocence inference theory" and its acknowledgement by other courts, see generally *Grant v. Demskie*, 75 F. Supp. 2d 201, 213–16 (S.D.N.Y. 1999) ("The theory is based on the premise that because most children of tender years are ignorant of matters relating to sexual conduct, a child complainant's ability to describe such conduct may persuade the jury that the charged conduct in fact occurred. To demonstrate that the child had acquired sufficient knowledge to fabricate a charge against the defendant, the theory reasons, the court should allow the defense to offer evidence that the child acquired sexual experience with someone else before he or she accused the defendant." (quoting Clifford S. Fishman, *Consent, Credibility, and the Constitution: Evidence Relating to a Sex Offense Complainant's Past Sexual Behavior*, 44 Cath. U.L. Rev. 706, 806 (1995)). This Court implicitly acknowledged this theory, without labeling it as such, in *Montgomery v. Commonwealth*, 320 S.W.3d 28 (Ky. 2010), when we held that certain KRE 412 evidence was properly excluded, in part, because the victim was fourteen years old when she made her first detailed allegations of sexual abuse and was thus "old enough in our sexually saturated culture to have acquired a great deal of sexual knowledge[, and her] jury was thus not likely to presume, *as in the case of younger victims*, that [her] knowledge must have derived from experience." *Id.* at 43 (emphasis added).

5

conduct charged, rather than his alleged conduct. He maintains that this evidence was not covered by KRE 412 and, thus, the trial court abused its discretion when it barred admission of Sally's prior exposure to a pornographic site for lack of notice as required by KRE 412(c).

It is correct that, under the right facts and circumstances, evidence of inadvertent exposure to pornographic material would not be subject to KRE 412's protective shield because it would not be evidence of the alleged victim's sexual behavior or predisposition.[8] Even so, that does not make this evidence admissible in this case because Basham's offer of proof does not demonstrate that Sally was previously exposed to the sort of sexual acts that she described in her allegations of abuse.

Sally was eight years old at the time she made her initial report and description of the molestation. That being the case, evidence of an alternative source of knowledge could have probative force to rebut an inference that she

---

[8] Courts in other states, however, have also concluded that such proof is not covered by the locale's rape-shield law. *See People v. Mason*, 578 N.E.2d 1351, 1353 (Ill. App. Ct. 1991) ("The viewing of pornographic videotapes by a curious seven year old does not constitute evidence of ['prior sexual activity' or 'reputation' under Illinois rape-shield statute]."); *State v. Currier*, 808 A.2d 527, 531 (N.H. 2002) (inadvertent exposure to pornography and sexual paraphernalia was not evidence of prior sexual activity under New Hampshire rape-shield law); *People v. Mann*, 839 N.Y.S.2d 247 (App. Div. 2007) (child's observations of pornography was not sexual conduct within meaning of New York rape-shield law); *State v. Wright*, 776 P.2d 1294, 1296-98 (Or. Ct. App. 1989) (holding that having watched pornographic films was not evidence showing alleged victim's "past sexual behavior" and thus not subject to Oregon rape-shield statute); *State v. Marks*, 262 P.3d 13, 33 (Utah Ct. App. 2011) ("[E]xposure to pornographic images is not direct evidence of [alleged victim's] sexual activity."). *But see Payne v. State*, 600 S.E.2d 422, 424 (Ga. App. 2004) ("[A]lthough the victim's viewing of the pornographic movie was part of her sexual history or behavior and thus irrelevant under the rape-shield statute and Georgia case law to show her nonchastity or preoccupation with sex, it had relevance for [showing an alternative means of acquiring knowledge of the alleged sexual acts].")

6

would only have been able to describe the charged acts if they had in fact occurred. In her report of the abuse, Sally described various sexual acts including vaginal intercourse. If the evidence had been that she viewed websites depicting men and women engaged in intercourse, that would tend to rebut the inference that the only way the eight-year-old knew about sex was through Basham's abuse.

The problem with the offer of proof here, however, is that there was no evidence of the actual content of the websites purportedly seen by Sally. When defense counsel sought to introduce this evidence during her cross-examination of Sally, she stated that she only wanted to ask whether Sally "had ever clicked on any websites where she had seen naked people," and that if Sally said yes, the inquiry would end there.

But merely seeing images of naked people does not provide an alternate source of Sally's knowledge of the specific sexual behaviors she described in her allegations against Basham. Since this offer of proof failed to demonstrate that Sally was exposed to a prior source of knowledge about the specific sex acts charged, it was not probative or relevant, and was therefore inadmissible.

Basham further argues that the exclusion of this evidence violated his constitutional right to present a defense under the Due Process Clause of the Fourteenth Amendment and the Compulsory Process and Confrontation Clauses of the Sixth Amendment. *See Holmes v. South Carolina*, 547 U.S. 319, 324 (2006); *Crane v. Kentucky*, 476 U.S. 683 (1986). But this constitutional guarantee does not give criminal defendants a right to present evidence that is

not probative, nor does it authorize a fishing expedition at trial. If the offered evidence does not prove the point at issue, it cannot be a defense.

For these reasons, the trial court did not err in excluding evidence of Sally's incidental exposure to allegedly pornographic websites.

## B. The trial court did not abuse its discretion by striking Juror 864016 for cause.

During voir dire, Juror 846016 expressed frustration and uncertainty over the penalty process and potentially having to address it again in Basham's case. Basham argues that since Juror 846016 ultimately acknowledged that she had a duty to follow the law and would do so, the trial court's decision to strike her for cause was prejudicial error because it allowed the Commonwealth an additional peremptory challenge, which Basham presumes would have otherwise been used on Juror 846016.

During voir dire, the trial judge questioned Juror 864016 after she indicated that she had sat on a jury in a criminal case the previous week "that w[ould] probably affect [her] ability to sit on this case." The jury in that case found the defendant guilty of the charged crime and of being a persistent felony offender. Juror 864016 made numerous statements about the concerns and difficulties she had with sentencing, particularly with respect to having to find whether the defendant was a persistent felony offender. Although she did say she would be able to follow the law, she did so amidst multiple statements exhibiting confusion and frustration with the process. In fact, the entire exchange was confusing and ended with the venire member's concerns remaining largely unresolved. The trial court then struck this juror for cause.

A trial court's decision on whether to strike a juror is reviewed for a clear abuse of discretion. *See Soto v. Commonwealth*, 139 S.W.3d 827, 848 (Ky. 2004) ("A determination whether to excuse a juror for cause lies within the sound discretion of the trial court and is reviewed only for a clear abuse of discretion."). Generally, appellants complain that trial courts *fail* to strike jurors for cause when they should, which can then cause them to have to use a peremptory strike and/or end up with a biased juror on the jury. *See, e.g., Shane v. Commonwealth*, 243 S.W.3d 336 (Ky. 2008). The abuse of discretion standard can be more easily applied to this scenario.

But when a trial court *strikes* a juror for cause, there is little for a defendant to complain about except that, as here, the juror possibly held views favorable to an acquittal. This clearly denotes bias *for* a defendant, and is equally as unfair as seating a juror biased *against* the defendant. Consequently, striking a juror for cause would have to be an abuse of discretion tantamount to some kind of systematic exclusion, such as for race, in order to be reversible. *See Batson v. Kentucky*, 476 U.S. 79 (1986). There is simply no prejudice to a defendant from striking any juror for cause unless the fairness of the entire jury process is undermined.

We have repeatedly encouraged trial courts to strike a juror when a reasonable person would question whether the juror would be fair, because a fair juror is at the heart of a fair and impartial trial. We have made it clear that "when there is uncertainty about whether a prospective juror should be stricken for cause, the prospective juror should be stricken." *Ordway v. Commonwealth*, 391 S.W.3d 762, 780 (Ky. 2013). "[T]hat is, if a juror falls in a

9

gray area, he should be stricken." *Id.* Further driving home the point, "[w]e reiterate[d] that trial courts should tend toward exclusion of a conflicted juror rather than inclusion, and where questions about the impartiality of a juror cannot be resolved with certainty, or in marginal cases, the questionable juror should be excused." *Id.* Though framed in cases where the trial court failed to strike a juror claimed to be biased against a defendant, the analysis is the same when a juror is biased for a defendant.

By erring on the side of caution and striking Juror 846016, the trial court preserved the integrity of the trial. The trial court made it fair for *both* the defendant and the Commonwealth. This was clearly not a systematic exclusion. There was no abuse of discretion.

### III. Conclusion

For the reasons set forth above, the judgment of the Jefferson Circuit Court is affirmed.

All sitting. Minton, C.J.; Abramson, Keller, Scott and Venters, JJ., concur. Cunningham, J., concurs by separate opinion.

CUNNINGHAM, J., CONCURRING: I disagree with the Court's conclusion that the trial court's refusal to allow the child victim to testify about seeing pornographic websites was not error. The victim was eight years old at the time of the crime and twelve when testifying, and her viewing of these websites conceivably could have influenced her testimony. Nevertheless, I agree with the Court's judgment because this error was harmless.

10

COUNSEL FOR APPELLANT:

Cicely Jaracz Lambert
Assistant Appellate Defender
Office of the Louisville Metro Public Defender
Advocacy Plaza
717-719 West Jefferson Street
Louisville, Kentucky 40202

Daniel T. Goyette
Louisville Metro Public Defender of Counsel
Office of the Louisville Metro Public Defender
Advocacy Plaza
717-719 West Jefferson Street
Louisville, Kentucky 40202

COUNSEL FOR APPELLEE:

Jack Conway
Attorney General

Thomas Allen Van De Rostyne
Assistant Attorney General
Office of Criminal Appeals
Office of the Attorney General
1024 Capital Center Drive
Frankfort, Kentucky 40601-8204