Julius WALLACE, Appellant

v.

COMMONWEALTH of Kentucky, Appellee

2013–SC–000332–MR

Supreme Court of Kentucky.

RENDERED: AUGUST 20, 2015

Rehearing Denied February 18, 2016

COUNSEL FOR APPELLANT: Daniel T. Goyette, Louisville Metro Public Defender of Counsel, Bruce P. Hackett, Chief Appellate Public Defender, Cicely Jaracz Lambert, Assistant Appellate Defender, Chad Alan Graham, Assistant Public Defender, Office of the Louisville Metro Public Defender Advocacy Plaza, 717–719 West Jefferson Street, Louisville, Kentucky 40202

COUNSEL FOR APPELLEE: Jack Conway, Attorney General, Christian Kenneth Ray Miller, Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General, 1024 Capital Center Drive, Frankfort, Kentucky 40601

OPINION OF THE COURT BY
JUSTICE NOBLE

The Appellant, Julius Wallace, was convicted of three counts of first-degree robbery, two counts of second-degree robbery, possession of a handgun by a convicted felon, and being a persistent felony offender. He was sentenced to 30 years in prison. On appeal, Wallace claims (1) that he was entitled to a mistrial after the Commonwealth suggested during closing argument that several of its witnesses had not identified Wallace from the stand because they were afraid; (2) that the trial court erred by striking a juror for cause; (3) that the admission of certified copies of court files of prior misdemeanor and felony convictions—which provided details of the facts and circumstances of the crimes, victims' names and addresses, and charges which were later amended or dismissed—was palpable error; and (4) that the trial court should have held a separate trial before a new jury for the severed handgun charge, rather than holding one "trifurcat-ed" trial at which all the charges were decided.

Finding no reversible error, this Court affirms.

## I. Background

Wallace's convictions arose from five separate robberies committed in Louisville over the course of several days.

The first robbery occurred on October 25, 2010, at Juanita's Burger Boy at around 5:00 a.m. Delanea Slaughter was working at that time. After paying for some food, a customer pulled a gun on Slaughter and demanded money. Still brandishing the gun, the robber then demanded money from Pastor Stephen De-George, who was at the restaurant that morning doing a Bible study with inner-city youth. DeGeorge would later provide a description of the robber matching Wallace, and Slaughter picked his picture out of a police photo-pack lineup a few days later. Video surveillance also captured the crime.

The next two robberies occurred on October 30, 2010. Video surveillance captured a robbery of Mo's Food Mart that day, when Benjamin Bruner was working as the store's clerk. A man who Bruner would later identify as Wallace demanded a refund for a prior purchase, but Bruner refused to give it to him. According to the clerk, the man then raised his shirt and put his hand on the butt of a gun. Bruner gave him money and the robber left.

Later that day, JR's Foodmart was also robbed. The employee working at the time, Jacqueline Goldsmith, managed to press a panic button, but when the robber saw this, he pulled a gun and demanded money. Goldsmith would later identify Wallace as the robber in a photo-pack lineup.

The following day, October 31, 2010, Mo's Foodmart was robbed while John Mize was working the cash register. A man entered the store and demanded the cash out of the register. When the man began reaching for something at his belt line, Maze pulled his own gun on the man. After the two exchanged words, the man left the store. When Maze was later shown a photo-pack lineup, he identified two photographs of men that may have been the would-be robber, one of which was Wallace.

Also on October 31, Juanita's Burger Boy was again robbed, and this robbery was captured by video surveillance as well. Ronald Finn was working when a man entered, asked for a soda, and then reached over the counter and took money from the cash register. The robber told Finn, "Get away from the register or I'll kill you. I have a gun in my pocket." Finn called 911 after the robber left, and when he was shown a photo-pack lineup the next day, he pointed out Wallace's picture as closely resembling the robber.

Upon viewing the video surveillance of the October 31 robbery of Juanita's Burger Boy, Detective Doug Brooks recognized Wallace and arrested him on November 1, 2010.

After being read his *Miranda* rights and signing a waiver of those rights, Wallace was interviewed by Detective Alicia Rhudy. Initially, he denied having any involvement in the robberies. Detective Rhudy then showed him surveillance images from the Juanita's Burger Boy robberies and discussed other evidence linking him to the crimes. Wallace eventually responded, "I didn't mean to rob those people," after which he admitted and denied various aspects of all five robberies.

Wallace was charged in one indictment with five counts of first-degree robbery and one count of possession of a handgun by a convicted felon. A pretrial order was later entered severing the handgun charge from the robbery charges.

A "trifurcated" jury trial was held over the course of five days beginning on February 5, 2013. In a bifurcated guilt phase, the jury first considered only the robbery charges and found Wallace guilty of first-degree robbery on three of the counts and second-degree robbery on the other two.

The jury then heard about and considered the severed handgun charge. Wallace stipulated to having a prior felony conviction at the time of the robberies, and he was found guilty of having been in possession of a handgun while being a convicted felon.

A consolidated penalty phase was then held. The jury found Wallace guilty of being a persistent felony offender (PFO), and ultimately recommended maximum prison sentences of twenty years for each first-degree robbery conviction, enhanced to thirty years for first-degree PFO; mid-range prison sentences of seven years for both second-degree robbery convictions, enhanced to twelve years for first-degree PFO; and a maximum prison sentence of ten years for the handgun conviction, enhanced to fifteen years for second-degree PFO. The jury recommended all sentences run concurrently for a total sentence of thirty years' imprisonment. The trial court sentenced Wallace in accordance with the jury's recommendations.

Wallace now appeals to this Court as a matter of right. *See* Ky. Const. § 110(2)(b). Additional facts will be developed as necessary in the discussion below.

## II. Analysis

**A. Wallace is not entitled to a mistrial for alleged prosecutorial misconduct during closing argument.**

Wallace's first claim of error is that the trial court abused its discretion in failing to grant a mistrial following statements made by the Commonwealth during its guilt-phase closing argument on the robbery charges. He claims that, in her closing, the prosecutor improperly alluded to prior unsolicited yet improper testimony about pre-trial communications from an anonymous person to a prosecution witness attempting to dissuade her from testifying against Wallace.[1] This evidence was inadmissible because there was no proof that the attempts to influence the witness's testimony were made by the accused or by someone authorized to do so on his behalf, see *Campbell v. Commonwealth*, 564 S.W.2d 528, 531 (Ky.1978), and Wallace's objection to the earlier testimony was appropriately sustained.[2] But the error he raises on appeal allegedly occurred when the Commonwealth, without any proper evidentiary basis, argued in closing that one possible reason why several of its witnesses (including the witness who had given the improper testimony earlier in the trial) did not identify Wallace from the stand at trial was because they were "terrified," insinuating that he had influenced the testimony of witnesses through intimidation or harassment. For the reasons provided below, this Court finds no reversible error in the trial court's failure to grant a mistrial.

Because our decision here is informed by how this all played out, it is important to understand what exactly happened at trial.

The jury first heard the complained-of testimony from Delanea Slaughter, the employee-victim of the first robbery at Juanita's Burger Boy. After she tearfully described the details of the robbery and recounted the police response, the following exchange occurred:

Commonwealth's Attorney: Did you speak with the detective again after this happened?

Slaughter: Yes.

Commonwealth's Attorney: Do you remember about when that was?

Slaughter: No, honestly I don't.

Commonwealth's Attorney: Was it the same day? Was it a week later?

Slaughter: No, it was some time later, um, because I get phone calls at work. Like people saying they're people who they're not. Like, "Are you going to court to testify against him?"

Defense Counsel: Objection.

During the ensuing bench conference, Wallace's counsel moved for a mistrial. The trial court sustained the objection but overruled the request for a mistrial. The court and the parties then discussed how to proceed, and defense counsel agreed to have Slaughter admonished outside the presence of the jury. No jury admonition was requested, and none was given.

Though as noted above, Slaughter's non-responsive testimony is only tangentially related to the error now raised on appeal. Instead, Wallace claims entitlement to a mistrial specifically for the following closing-argument remarks:

Delanea Slaughter picks him out of a photo pack very shortly after this happened. She picked him out on Novem-

---

1. The Commonwealth's attorney explained at a pre-trial conference that several victims had been contacted by a man claiming to be the prosecutor and encouraging them not to testify. Apparently, none of the communications were threatening and had instead included pleas to testify on Wallace's behalf and to "save him."

2. During pre-trial discussions, the Commonwealth conceded that it did not have evidence at that time to charge Wallace with tampering with a witness. *See* KRS 524.050.

ber 1st, which was six days after she had been held up at gunpoint.

And [defense counsel] makes a really big deal about the fact that only Mr. Bruner identified the defendant on the stand. But Delanea Slaughter was shown a photo pack back then and picked him out. It has been two years. But back then, shortly after the robbery, she picked him out.

And you'll have [Slaughter's photo pack] to look at. This is her photo pack. It's in evidence. You'll have it to look at.

She picked him out back then. And, you know, [defense counsel] said there's no reason why they wouldn't, why we wouldn't have our witnesses, all our witnesses, identify him from the stand. Well I can think of a pretty good reason: they're terrified. Why would we make them go through this again?

Wallace then objected to the prosecutor's comments, complaining that the argument was "purely assumption." And he added, "What does anyone have to be afraid of in a courtroom full of deputies? This is improper." In sustaining the objection, the trial court agreed that the fact that certain witnesses did not identify Wallace from the stand was part of the trial, while there was nothing in evidence for why they did not do so to allow for rebuttal by the Commonwealth on that point. As with the sustained objection to Slaughter's earlier testimony, Wallace did not request the jury be admonished to disregard the prosecutor's improper argument, and no such admonition was given.

But Wallace now contends that these statements by the Commonwealth impermissibly called to mind Slaughter's earlier improper testimony about the phone calls, from which the jury would have inferred that either Wallace or someone he authorized had attempted to influence the wit-

nesses' testimony. And having seeded that prejudicial inference in the minds of the jurors, the Commonwealth, he argues, compounded this error by suggesting that such pre-trial communications were the reason those witnesses had not identified him from the stand—that is, because they were "terrified" (presumably, of him). This, he claims, deprived him of a fair and impartial trial.

The Commonwealth responds that Wallace waived any appellate review of this error because he chose not to request an admonition or make a timely motion for a mistrial when the trial court sustained his objection, and urges us to summarily dismiss this claim as such.

■ This error is unpreserved for appellate review, and was insufficiently raised to the trial court below. To preserve an error for review, a party must timely bring the error to the court's attention and "make[ ] known to the court the action he desires the court to take." RCr 9.22; accord West v. Commonwealth, 780 S.W.2d 600, 602 (Ky.1989). And a party claiming entitlement to a mistrial must make a timely request for such relief. Jenkins v. Commonwealth, 477 S.W.2d 795, 797–98 (Ky.1972). This issue is unpreserved because Wallace failed to adequately raise the alleged error in the prosecutor's arguments to the trial court below and timely request relief.

First, the Commonwealth correctly points out that the specific grounds that Wallace now claims entitle him to a mistrial are being raised for the first time on appeal. When objecting to the closing argument statements, Wallace's counsel made no mention of Slaughter's prior testimony regarding the telephone calls. Nor did he argue anything to the effect that the prosecutor's comments had insinuated that the witnesses had not identified Wal-

lace from the stand because they were afraid *of him* or that it was he who had scared them into not doing so. Wallace's chance to request further relief—i.e., an admonition or a mistrial—and thereby raise the more specific grounds of prejudice he now asserts entitle him to that relief, was during that bench conference when the trial court would have had a reasonable opportunity to consider those grounds and rule on the request.

But Wallace's motion for a mistrial was made near the end of the Commonwealth's closing argument during a bench conference on a wholly unrelated objection and 28 minutes after the objection at issue was sustained. Given this length of time, this Court cannot find that Wallace's request for relief was timely. While 28 minutes might be no time at all in some situations, it is quite a significant amount of time in the closing argument context. Here, the focus of the parties', and (more importantly) the judge's, attention changed an untold number of times as the prosecutor's argument rolled through myriad evidentiary and legal issues as she highlighted the virtues of her case and emphasized the flaws of the defense's. The trial judge could not be expected to sufficiently recall the arguments made on the objection he had sustained 28 minutes of closing argument earlier to allow him to adequately consider and rule on the delayed motion.

Indeed, this is especially true here due to the summary nature of the request for a mistrial. That is, after the trial court overruled the unrelated defense objection, defense counsel offhandedly added, "And just for the record, while we're up here, I'll make a motion for mistrial on that ground and on the other two grounds objected to so far." This is exactly what Criminal Rule 9.22, by requiring that trial judges be

afforded a reasonable opportunity to rule upon alleged errors when they occur, was designed to avoid. *Jenkins*, 477 S.W.2d at 797.

■ Accordingly, this claim of error is unpreserved and, at best, subject to palpable error review. RCr 10.26. Under Criminal Rule 10.26, a reviewing court may reverse for an unpreserved error affecting the substantial rights of a party if it determines the error resulted in manifest injustice—i.e., that there is a "probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky.2006). But here, given that the court was not given the opportunity to rule in a timely manner, or the error was otherwise waived by failing to request an admonition, and that the defense attorney failed to state sufficient grounds for a mistrial, this Court could not have found reversible error even had review of the error been preserved. Certainly, the Court cannot reach a finding of palpable error in such an instance.

The Commonwealth's improper closing argument statements did not result in manifest injustice. The chain of inferences needed to arrive at the alleged prejudice flowing from the prosecutor's statements is too tenuous, and the totality of the evidence against Wallace too overwhelming, for this Court to find probability of a different result absent the complained-of statements. Therefore, there is no palpable error warranting reversal.

**B. The trial court did not err in striking juror for cause.**

■ Wallace next claims that the trial court erred in striking for cause Juror 2[3]

**3.** The parties' briefs identify the subject venire member as "Juror #2 (694507)." For ease of reference, this opinion will refer to him only as Juror 2.

over defense objection. This claim is without merit.

During voir dire, the trial judge asked, "Is there anybody with any religious or personal beliefs that would prevent them from sitting in judgment of another person." In response, Juror 2 expressed unease in having to judge another person's fate after recently sitting on a jury in another criminal case. He further explained, "I listened to the evidence as presented. It just seemed to me both sides stretched truths, distorted facts. And I'm very, kind of, uncomfortable to judge that based on that." In response to further questioning by the Commonwealth regarding his ability to fairly and impartially weigh the evidence, the venire member provided, "I can listen to the evidence and weigh it. But will I feel one hundred percent confident in the decision based on that? I don't think so." And after he was reminded of the prosecution's burden of proof and asked whether he would hold the Commonwealth to a higher burden, Juror 2 replied, "No, but I'd have to be very confident. I don't want to be uneasy about deciding the fate of another human. It affects other people." After questioning, Juror 2 was struck for cause over defense objection.

Wallace now argues that the trial court abused its discretion in striking Juror 2 for cause because the venire member ultimately stated that he would be able to listen to and weigh the evidence. Criminal Rule 9.36 requires trial courts to excuse a juror whenever there is a reasonable basis to believe they cannot render a fair and impartial verdict based on the evidence. Wallace maintains that there was no reasonable basis for the trial court to believe Juror 2 could not be fair and impartial because the juror's statements were honest; were not "unequivocal statement[s] of bias or inability to [be] impartial"; evi-

denced only "a recently formed belief of something he had noticed in a different trial," rather than being "premised on religious beliefs that had been long held and permanent"; and were devoid of "any animosity against the Commonwealth."

Over the past several years, this Court has had several opportunities to consider claims of error similar to the present. In fact, this Court recently addressed an essentially identical claim raised in *Basham v. Commonwealth*, 455 S.W.3d 415 (Ky. 2014). As with Juror 2, the venire member in *Basham* expressed frustration and uncertainty with the process after having previously served on a jury in another criminal case. And like Wallace, Basham argued that the trial court erred in striking the juror for cause because the juror ultimately acknowledged her duty to follow the law and stated that she would do so. Basham claimed that this error prejudiced him because it allowed the Commonwealth an extra peremptory challenge, which he assumed would have otherwise been used on the juror at issue.

■ In rejecting this argument and finding no abuse of discretion, the Court in *Basham* emphasized our repeated direction to trial courts to strike jurors any time reasonable questions about their impartiality persist and cannot be resolved conclusively. As we reiterated, "if a juror falls in a gray area, he should be stricken." *Id.* (quoting *Ordway v. Commonwealth*, 391 S.W.3d 762, 780 (Ky.2013)).

■ Striking a juror for cause simply will not constitute a reversible abuse of discretion absent evidence of systematic exclusion (e.g., on the basis of race or gender) that undermines the fairness of the entire jury process. *Id.* (citing *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)). In sum, "when a trial court strikes a juror for cause, there is little for a defendant to complain about

except that, as here, the juror possibly held views favorable to an acquittal. This clearly denotes bias for a defendant, and is equally as unfair as seating a juror biased against the defendant." *Id.* (emphasis omitted). The holding in *Basham* clearly controls the outcome in this case.

Wallace has not demonstrated any sort of systematic exclusion undermining the fundamental fairness of the jury process. Instead, just as in *Basham*, the trial court in this case erred toward exclusion of the questionable juror. In doing so, it helped preserve the integrity of the trial by ensuring that it would be fair for both Wallace and the Commonwealth. The trial court properly struck Juror 2, and there was certainly no abuse of discretion.

**C. Admission of evidence of prior offenses exceeding the scope of the truth-in-sentencing statute was not palpable error.**

■ Wallace also argues for reversal of his sentence and remand for a new penalty phase because information related to prior misdemeanor and felony convictions was introduced during the penalty stage in violation of the truth-in-sentencing statute, KRS 532.055, as interpreted by this Court in *Mullikan v. Commonwealth*, 341 S.W.3d 99 (Ky.2011). Wallace acknowledges that this evidentiary error is unpreserved and requests palpable error review under RCr 10.26 and KRE 103(e). The Commonwealth concedes that the admission of the complained-of evidence was erroneous, but contends that this error was not palpable.

During the sentencing phase, the Commonwealth was permitted to introduce, without objection,[4] certified copies of various court records related to Wallace's prior felony and misdemeanor convictions as Commonwealth's Exhibits P2 to P6. These records consisted of a plethora of uniform citations, arrest warrants, charging documents, plea agreements, orders on pleas of guilty and granting probation or conditional discharge, and notices of motions to revoke probation or conditional discharge. And, unsurprisingly, they are riddled with inadmissible evidence that our case law has made clear is outside the scope of the truth-in-sentencing statute, which allows the Commonwealth, during the penalty phase of the trial, to offer evidence that is "relevant to sentencing including . . . [m]inimum parole eligibility, prior convictions of the defendant, both felony and misdemeanor; . . . [and] [t]he nature of prior offenses for which he was convicted." KRS 532.055(2)(a). In recent years, this Court has unequivocally held again and again that when describing the "nature of prior offenses" resulting in convictions under KRS 532.055(2)(a), permissible evidence "is limited to conveying to the jury the elements of the crimes previously committed." *Mullikan*, 341 S.W.3d at 109.

Clearly exceeding that mandate, the complained-of records here impermissibly introduced factual details and circumstances of the prior crimes, names and addresses of victims, and prior charges subsequently amended or dismissed. *See, e.g., Hudson v. Commonwealth*, 979 S.W.2d 106, 110 (Ky. 1998) (reversed and

---

4. Wallace did object to one of the exhibits, but that exhibit was not introduced. The Commonwealth's initial request was to admit all the certified copies as Commonwealth's Exhibits P2 to P7, and defense counsel and the prosecutor then convened at the bench for defense counsel to review the documents. While the two attorneys were thumbing through the certified records, defense co-counsel approached the bench to object to the admission of one of the exhibits, which apparently related to a "violation," rather than a misdemeanor offense, and was therefore not admissible under KRS 532.055(2)(a). Defense counsel did not otherwise object to the remaining certified records.

remanded for new sentencing phase because factual circumstances of convictions from warrants and uniform citations was read to jury); *Webb v. Commonwealth,* 387 S.W.3d 319, 329 (Ky.2012) (reading from indictments detailing other than elements of offense, including the names of eight victims, five of which were law enforcement officers, was palpable error in case where all victims were either law enforcement or corrections officers); *Chavies v. Commonwealth,* 354 S.W.3d 103, 114 (Ky. 2011) ("The introduction of dismissed and amended charges was contrary to KRS 532.055.").

For example, Commonwealth's Exhibit P3 consists of certified copies of Jefferson Circuit Court records for Case No. 09CR3618, including an indictment, *Alford*[5] plea agreement, motion to enter the plea, order accepting the plea, judgment of conviction granting probation, and order transferring the case to a different division of the circuit court for probation revocation proceedings. The indictment charged Wallace with second-degree burglary and theft by unlawful taking of property over $500 but less than $10,000. It also listed the address of the burglarized residence on W. Muhammad Ali Boulevard, as well as the name of the theft victim. The plea agreement included a "facts of the case" section, which stated that Wallace had kicked in the front door of the above-referenced dwelling; that officers had discovered him inside the residence; that property damage was evident and related to various electronic items piled together; that he had been driving a white Ford Taurus, which was parked behind the dwelling with its trunk raised; that the car had been taken from the victim referenced

above; and that Wallace had told the victim that he was not going to return the vehicle. In the judgment of conviction granting probation, the second-degree burglary charge was amended to third-degree burglary; and as conditions of supervised probation, Wallace was ordered to pay restitution and have no contact with the burglary victim, who was named in that order.

While Commonwealth's Exhibits P2, P4, P5, and P6 contain substantially similar information regarding Wallace's other prior convictions, Exhibit P3 best exemplifies each noted type of evidence this Court has previously condemned as impermissible under KRS 532.055(a)(2). Accordingly, we need not provide similarly detailed recitations of the specific contents of each exhibit in order to resolve this claim. Suffice it to say that the records in Exhibit P2 relate to convictions for possession of cocaine and third-degree burglary; Exhibit P4 involves a conviction for possession of marijuana; Exhibit P5 evinces conviction for attempted second-degree burglary (although the certified copy of the information seems to show he was originally charged with two counts of second-degree burglary); and Exhibit P6 is related to a misdemeanor theft by unlawful taking conviction.[6] Additionally, Wallace contends that the most prejudicial evidence was introduced through Exhibit P6: namely, a handwritten notation on a notice of motion to revoke conditional discharge indicating that the basis for seeking revocation was re-arrest on "unlaw trans w/ minor" and "Aslt4."

■ As already noted, there is no dispute that much of the foregoing evi-

---

**5.** *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

**6.** Exhibits P5 and P6 overlap somewhat. Each exhibit contains copies of the same or-

der of conditional discharge, as apparently the two charges seem to have been consolidated for sentencing purposes.

dence exceeded the scope of KRS 532.055(2)(a) and was inadmissible. But since this error is unpreserved, it is reviewed only for palpable error and will warrant reversal only if we determine that the erroneous admission of this impermissible evidence resulted in manifest injustice. RCr 10.26. As this Court has previously noted, palpable error is considered to have two components: "obviousness and seriousness, the latter of which is present when a failure to notice and correct such an error would seriously affect the fairness, integrity, and public reputation of the judicial proceeding." *Ernst v. Commonwealth*, 160 S.W.3d 744, 758 (Ky.2005) (internal quotation marks omitted). "[T]he required showing is probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky.2006); *see also Ernst*, 160 S.W.3d at 758 ("A finding of palpable error must involve prejudice more egregious than that occurring in reversible error.").

First, in considering the egregiousness of the prejudice resulting from the erroneous admission at issue, a review of the prior decisions of this Court involving the introduction of similar evidence reveals a common thread running through many of the cases finding palpable error that is not present here. In cases reversing for unpreserved errors of evidence admitted outside the scope of KRS 532.055(2)(a), the improper evidence was typically either read to the jury by a witness or prosecutor or was referenced or emphasized by the prosecutor during argument, or both.

For instance, this Court recently found palpable error where the Commonwealth read aloud to the jury the names of victims, several of which were law enforcement officers, *see Webb*, 387 S.W.3d at 329–30, and where the prosecutor embel-

lished the defendant's criminal history by eliciting direct testimony in the penalty phase of the trial about original but later amended charges and then emphasizing them in closing argument, *see Blane v. Commonwealth*, 364 S.W.3d 140, 152–53 (Ky.2012). *But cf. Miller v. Commonwealth*, 394 S.W.3d 402, 405–08 (Ky.2011) (evidence of prior acts of uncharged criminal activity elicited by Commonwealth on cross-examination of defendant during penalty phase did not amount to palpable error).

On the other hand, the Court has found that it was not palpable error when evidence was admitted of prior dismissed and amended charges on an indictment where there had been no direct testimony or prosecutorial reference to the improper information. *See Martin v. Commonwealth*, 409 S.W.3d 340, 347–49 (Ky.2013); *Chavies*, 354 S.W.3d at 114–15 (no palpable error where, among other things, dismissed and amended charges were never pointed out to the jury). *But cf. Stansbury v. Commonwealth*, 454 S.W.3d 293, 303–05 (Ky.2015) (finding palpable error where improper evidence of dismissed charges and victims' identities was admitted through copies of court records).

Here the inadmissible evidence was only submitted to the jury through the various certified court documents and was intermingled with the properly admitted evidence. The Commonwealth's witness recited to the jury only proper information regarding Wallace's criminal history—namely, the offenses resulting in convictions, relevant dates, and sentences—and the prosecutor did not refer to the other inadmissible information in closing arguments. The fact that this case involved no "testimonial or argumentative reference" to the improper evidence, but rather "only the possibility that the jurors might have gleaned that information if they looked at

the judgments during their deliberations," *Martin*, 409 S.W.3d at 349 (emphasis omitted), militates against finding palpable error here.

And the moderate total sentence Wallace received on all the counts further leads this Court to find no palpable error resulting in manifest injustice. As the Commonwealth points out, because Wallace was a first-degree persistent felony offender, he was facing possible sentences of twenty years to life in prison for each first-degree robbery conviction, *see* KRS 532.080(6)(a), yet he received only a total sentence of thirty years. This mid-to-low-range sentence was certainly not unreasonable.

Accordingly, this Court cannot find that the introduction of the improper penalty-phase evidence created a manifestly unfair penalty phase. *See Martin*, 207 S.W.3d at 3–4. And the Court does not believe it is likely that the jury would have sentenced Wallace more leniently had the inadmissible evidence contained in the certified court records not been admitted. *See id.* Therefore, the erroneous admission of the improper penalty-phase evidence did not result in manifest injustice and does not warrant reversal.

This Court cautions, however, that this does not provide the Commonwealth with a stealthy avenue to introduce improper materials in the penalty stage. We have clearly said to do so is error. And, when properly preserved, putting such evidence in *will* result in reversible error. A savvy defense attorney will not allow such attempts to go unchallenged.

**D. The trial court did not abuse its discretion by "trifurcating" the trial** into two guilt phases and one consolidated penalty phase in lieu of separately trying the handgun charge before a different jury *in this case.*

■ Finally, Wallace asks this Court to reverse and dismiss with prejudice his conviction for possessing a handgun while being a convicted felon or, in the alternative, to reverse and remand the felon-in-possession charge for a new trial because it was error for the trial court to allow the severed handgun charge to be tried in a trifurcated trial, with a bifurcated guilt phase but one single sentencing phase, before a single jury.

Wallace contends that the longstanding rule set forth in *Hubbard v. Commonwealth*, 633 S.W.2d 67 (Ky.1982), which mandates severance under Criminal Rule 9.16[7] of a charge of possession of a handgun by a convicted felon, required the severed handgun charge to be tried in a completely separate trial before a new jury. Because Criminal Rule 9.16 also directs a court to order "separate trials of counts," Wallace argues that any relief short of holding an entirely separate trial on the handgun count is procedurally improper, prejudicial, and warrants reversal of his conviction on that count.

■ It appears that this is the first review of such a trifurcated process in Kentucky, and initially, Wallace's argument appears to have merit. The guilt phase of a trial for another offense cannot be tainted by evidence necessary to prove that a defendant has a prior criminal history sufficient to convict him of being a felon in possession of a handgun. That much is clearly established in our law.

---

7. Effective as of January 1, 2015, Criminal Rule 9.16 was relocated to Criminal Rule 8.31. The language of the new version of the rule is unchanged from that of the former Criminal Rule 9.16. Because Criminal Rule 8.31 was not in effect at the time of Wallace's trial, and for the sake of consistency, this opinion refers only to the rule's previous version.

Wallace was initially charged with the five counts of first-degree robbery and the handgun count in the same indictment. From a joinder perspective, this was not improper because "the offenses are of the same or similar character or are based on the same acts or transactions connected together or constituting parts of a common scheme or plan." RCr 6.18. But that general rule of joinder is subject to Criminal Rule 9.16, which requires severance "[i]f it appears that a defendant or the Commonwealth is or will be prejudiced by a joinder of offenses."

And Wallace is correct that this Court in *Hubbard* long ago set forth how trial courts should resolve questions of joinder and severance of multiple charges when possession of a firearm by a convicted felon is one of the charged offenses. That is, this Court made clear that a firearm charge is required to be severed from other charges to avoid the prejudice that necessarily arises from a jury learning of a defendant's otherwise inadmissible criminal history when considering guilt or innocence on other charged offenses. *See Hubbard,* 633 S.W.2d at 68.

Accordingly, the trial court below properly severed the handgun charge from the robbery charges. But instead of holding a separate trial for the severed charge before a new jury, the trial court chose to conduct the guilt proceeding on the handgun charge with the same jury that had found Wallace guilty of three counts of first-degree robbery and two counts of second-degree robbery, before then proceeding to one consolidated penalty phase on all the counts.

This Court can find no legal authority expressly condoning or condemning "trifurcation" of criminal trials in this manner when a charge of possession of a handgun by a convicted felon is required to be severed from other offenses. Wallace maintains that *Hubbard,* and Criminal Rule 9.16 are controlling.

But *Hubbard* itself does not expressly lay out how trial courts should go about avoiding the prejudice which requires the handgun charge to be severed from other charges. And it bears noting that the Court's discussion in *Hubbard* directly analogized severance of a felon-in-possession charge with "[t]he two stage proceeding in persistent felony-offender cases." 633 S.W.2d at 68. The Court explained this "was designed for the specific purpose of obviating the prejudice that necessarily results from a jury's knowledge of previous convictions while it is weighing the guilt or innocence of a defendant on another charge." *Id.* Therefore, *Hubbard* certainly can be read as at least implicitly contemplating exactly the sort of guilt phase bifurcation that occurred in this case.

And, this Court has previously approved of similar trifurcation procedures in cases involving subsequent-offense enhancements. *See, e.g., Peyton v. Commonwealth,* 931 S.W.2d 451, 455 (Ky.1996) (holding that it was proper to require the jury to first decide guilt as to trafficking charges, then determine PFO status, before finally considering the enhanced penalty range provided under the Controlled Substance Act as a result of present trafficking convictions being subsequent offenses). Contending that such cases are inapplicable here, however, Wallace distinguishes between penalty enhancements and the handgun charge, which is its own separate substantive offense, but he does not explain why that makes a difference.

Instead, Wallace relies primarily on the "separate trials" language of Criminal Rule 9.16. But that rule specifically provides that "the court shall order separate trials of counts ... *or provide whatever other relief justice requires."* RCr 9.16

(emphasis added). Since the actual prejudice to be avoided is the jury's awareness of his prior criminal history when considering his guilt or innocence on the robbery charges, could this be accomplished in a trifurcated proceeding before the same jury rather than two separate trials? If the goal, as it is often stated, is to keep the evidence of criminal history that must be introduced to prove felon in possession of a handgun out of trials of other offenses, that certainly happens in a bifurcated guilt phase trial.

But Wallace points out that the prejudice to be avoided by severance under *Hubbard* could flow in the other direction toward the handgun charge as well and, thus, bifurcation of a trial's guilt phase cannot adequately handle the prejudice of trying the charges in a single trial.

It is certainly the case that a defendant would be prejudiced by having a jury consider guilt or innocence on a felon-in-possession-of-a-handgun charge after having already heard evidence on other charges that necessarily paints him in a bad light and which *would not have been admissible* at a separate trial of the severed handgun charge.

For instance, consider a man who has been convicted of a felony who moves in with his mother following his release from jail and thereafter resides in her home. Assume investigations by law enforcement later uncover evidence that the convicted felon has been downloading and selling child pornography, and law enforcement officers obtain a proper warrant to arrest the man and search his (i.e., his mother's) residence for evidence of child pornography. During the search, the officers find tapes and CDs of child pornography and a handgun in a duffle bag under the convicted felon's bed. As a result, the man is indicted on several charges of possessing child pornography as well as one count of possessing a firearm while being a convicted felon.

In this scenario, severance of the handgun charge is required to avoid the prejudice that would result from the jury having knowledge of his previous felony conviction during the guilt phase of the child pornography trial. And bifurcation of the guilt phase in this situation would be inadequate to protect against the prejudice of trying these unrelated crimes to the same jury because the defendant would also be highly prejudiced by the jury's awareness of the child pornography offenses when considering the defendant's guilt or innocence on the firearm charge.

This example presents the prototypical severance situation involving unrelated offenses where evidence of the separate offenses would clearly be mutually inadmissible at separate trials, thus making joinder inappropriate. *See Roark v. Commonwealth,* 90 S.W.3d 24, 28 (Ky.2002). Because the taint of prejudicial, irrelevant evidence flows both ways, full severance of the handgun charge for a separate trial in front of a different jury would be required.

But such reciprocal prejudice is not present here. Joinder is proper on these charges because the facts are inextricably intertwined. A primary factor for finding prejudice requiring severance "is the extent to which evidence of one offense would be admissible in a trial of the other offense." *Ratliff v. Commonwealth,* 194 S.W.3d 258, 264 (Ky.2006) (quoting *Commonwealth v. Collins,* 933 S.W.2d 811, 816 (Ky.1996)). It is clear the robbery evidence would necessarily be admissible at a separate trial of the handgun charge because the handgun charge arose from Wallace's alleged use of the weapon during the commission of the robberies. And, since he used a handgun in the robberies, the

fact that he possessed a handgun is integral and obvious in the robbery charges.

Wallace, however, mistakenly argues that the Commonwealth had to prove possession of a handgun in only *one* of the robberies, but not all five, and therefore the evidence of all five robberies was more information than the jury in a separate trial would have heard.

But there are only two elements necessary to prove an offense under KRS 527.040: (1) possession of a firearm or handgun (2) by a convicted felon.[8] The second element is not at issue as Wallace stipulated to having previously been convicted of a felony. As to the first element, under the indictment, the Commonwealth had the burden of proving beyond a reasonable doubt that Wallace possessed a handgun "on our about the 30th day of October, 2010, in Jefferson County, Kentucky." Because all five robberies occurred over the course of seven days ending on October 31 and witnesses at each robbery either actually saw Wallace brandish a handgun or else saw him behave in a manner suggesting he had one in his waistband or pocket, evidence relating to each robbery certainly tended to make it more likely that Wallace had possessed a handgun "on or about" October 30.

The evidence of Wallace's possession of a handgun during the robberies on October 25 and 31 related directly to his commission of the exact crime charged and, thus, would not be subject to KRE 404(b)'s bar against proof of "other crimes, wrongs, or acts" to show a defendant's bad character and action in conformity therewith.

Since proof of the circumstances of each of the robberies is highly probative of Wallace having possessed a handgun during this period of time, the fact that this was an illegal activity does not mean this is not integral to the proof. The bottom line here is that the evidence of the robberies would have been admissible at a separate trial of the handgun charge for the purpose of proving the possession element of that crime.

Thus, prejudice does not flow both ways here. In fact, proof of possession of the handgun during five robberies creates no impermissible evidentiary prejudice at all. The same facts are necessary to prove both charges. When a handgun is used in the underlying offense by the person charged with being a felon in possession of a handgun, the rationale for severance for prejudice running from the underlying charge to the handgun charge does not apply.

Additionally, Wallace claims that prejudice resulted from the trifurcated proceeding because his counsel had no notice that the handgun charge was to be tried in this manner rather than by separate trial. It does at first appear that there may be an error in holding the trifurcated trial, seemingly without prior notice, because the trial court ordered that the handgun charge "w[ould] be tried separately." For essentially the same reasons explained above, however, Wallace's argument here also fails because he cannot show any prejudice resulting from this lack of notice.

Simply put, because all five counts of first-degree robbery were predicated upon his alleged use of a handgun during their commission, any issues related to the handgun were equally as important to his defense on the robbery counts as the handgun count. No matter which charge the jury considered, he needed to create a

---

**8.** The offense is enhanced from a Class D felony to a Class C felony when the firearm possessed is a handgun. KRS 527.040(2).

reasonable doubt about whether he had in fact been in possession of a handgun. And once the jury returned verdicts finding him guilty of three of the robbery charges, the only element of the handgun charge that therefore remained to be proved was whether or not Wallace had been a convicted felon at the time of those robberies. Since he stipulated to that fact at trial in the second guilt phase, the inadequate notice here in no way harmed his ability to prepare and present his defense.

In conclusion, trying the robbery charges and severed charge of possession of a handgun by a convicted felon in one trial with a bifurcated guilt phase followed by a consolidated penalty phase is not an *inherently* inappropriate means of complying with the purposes and requirements of Criminal Rule 9.16 and *Hubbard,* 633 S.W.2d 67. This procedure is only inappropriate if separate trials are necessarily required to avoid prejudice reciprocating between otherwise properly joined separate counts. Clearly, when the handgun is used in the underlying offense, there can be no such reciprocation.

Therefore, the trial court's refusal to have the handgun charge tried in a separate trial before a new jury was not an abuse of discretion.

### III. Conclusion

For the reasons set forth above, the judgment of conviction and sentence of the Jefferson Circuit Court is affirmed.

All sitting. All concur.