# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: SEPTEMBER 24, 2015
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2014-SC-000349-MR

HARRY HENRY PAYNE, JR.　　　　　　　　　　　　　　　　APPELLANT

ON APPEAL FROM JEFFERSON CIRCUIT COURT
V.　　　　　　　HONORABLE BARRY WILLETT, JUDGE
NO. 11-CR-003036

COMMONWEALTH OF KENTUCKY　　　　　　　　　　　　APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

The Appellant, Harry Henry Payne, Jr., was sentenced to 60 years' imprisonment after being found guilty of incest, first-degree sodomy, first-degree sexual abuse, and being a first-degree persistent felony offender. On appeal, he claims that the trial court erred (1) in striking Juror 929394 for cause on the fourth day of trial and (2) in failing to suppress the results of a buccal swab taken without a search warrant. Finding no grounds for reversal, this Court affirms.

### I. Background

The facts of the crimes in this case are not relevant to this appeal. It suffices to say that Payne was accused by his five-year-old granddaughter of making her take off her pants and underwear, taking off his own clothes, putting his private part in her bottom, and then shaking it to cause a "white

polar bear" to come out. The claims that Payne now raises relate to evidence collected by the police and a suppression hearing, and the striking of a juror during trial. This Court describes in detail only the facts related to those issues.

The suppression issue is related to a buccal swab performed by police. Buccal swabs are common procedures used to collect DNA samples that "involve[] wiping a small piece of filter paper or a cotton swab similar to a Q-tip against the inside cheek of an individual's mouth to collect some skin cells." *Maryland v. King*, 133 S.Ct. 1958, 1967–68 (2013). It "is a far more gentle process than a venipuncture to draw blood ... [and] involves but a light touch on the inside of the cheek." *Id.* at 1969.

After the Louisville Metro Police Department became aware of the allegations against Payne, patrol officers located and arrested him under an unrelated outstanding warrant. Upon his arrest, he was transported to the Crimes Against Children Unit office and was placed in an interview room around 12:30 a.m. A video recording, approximately two hours and eleven minutes long, documented Payne's time in the interview room. For most of that time, he sat unmoving in a chair and appeared to be asleep.

After about 42 minutes, Detective Angela Merrick entered the room. She roused Payne, advised him of his *Miranda* rights, and had him sign a waiver of those rights. Detective Merrick then attempted to question Payne about the allegations that had been leveled against him. Payne gave several nonverbal responses apparent on the video—for example, he shook his head "no" when asked if the allegations were true and shrugged his shoulders and turned up

2

his hand in an "I don't know" gesture when asked if he knew why the victim had made the allegations. Otherwise, he appeared mostly nonresponsive throughout the exchange. But because of the placement of the camera and the quality of the video, it is difficult to discern much detail, such as Payne's facial features. Detective Merrick left Payne alone again in the interview room about 16 minutes after she first entered.

About 25 minutes later, Detective Merrick returned to the interview room and again attempted to rouse Payne. She appeared to have more difficulty doing so than before, but he nevertheless eventually acknowledged her. She told him that she needed to swab the inside of his mouth and asked him for permission to do so. She eventually succeeded in having him sign a form acknowledging his consent to the buccal swab. His signature on the buccal-swab consent form is notably more scribbled than that on the *Miranda* waiver. After he signed the form, Payne opened his mouth to allow Detective Merrick to swab the insides of both of his cheeks.

At trial,[1] Payne moved to suppress the results of the buccal swab, arguing that the video evidence of his time in the interview room showed that his consent to the swab was not voluntary. The trial court held a hearing on the motion at which it heard testimony from Detective Merrick and watched the relevant portions of the video recording described above. In short, Detective Merrick testified that while Payne had appeared tired (she first read him his

---

[1] Payne raised his motion to suppress at trial because the Commonwealth failed to provide the interview room video recording until a few days before the start of trial. He raises no complaint about this timing, however.

rights at 1:09 a.m.), he had also appeared to her to be pretending to sleep to avoid speaking to her; that he had not appeared intoxicated and had not smelled of alcohol; that she had continued asking questions and getting his consent to the buccal swab because he had been responsive to her, albeit nonverbally; and that he had willingly signed both the *Miranda* waiver and buccal-swab consent form and had willingly opened his mouth to allow her to conduct the buccal swab. Payne did not testify.

Following the suppression hearing, the trial court denied Payne's motion to suppress, finding under the totality of the evidence that he had voluntarily consented to the swab. The court found that while it was difficult to get a good feel of Payne's behavior from the video, he did not appear to be intoxicated or unconscious. The court further found that Payne had communicated nonverbally despite appearing largely nonresponsive. And the trial court cited as the most important facts supporting its conclusion on voluntariness that Payne had signed the waiver and consent forms and that he had opened his mouth to allow the swab. Finally, the trial court found that even if Payne had not voluntarily consented to the buccal swab, the police would have inevitably obtained this information either by obtaining a pre-indictment search warrant or a post-indictment court order.[2]

Payne's other claim of error relates to a juror who was released in the middle of trial. During voir dire, the Commonwealth elicited from Juror 929394

_____

[2] *See generally* Leslie W. Abramson, *Kentucky Criminal Practice and Procedure* § 17.7 (5th ed. 2014) (discussing the inevitable-discovery exception to the fruit-of-the-poisonous-tree doctrine).

4

that a foster child of his had been charged with a crime. The juror stated that the child had previously been in his foster care but that the alleged crime had occurred at a time after the child had returned to his biological parents' care. Juror 929394 denied having any involvement with the case other than attending and watching the trial. He confirmed that it had been prosecuted by the Jefferson County Commonwealth's Attorney's office but denied that this fact, or anything else about the prior case, would affect his ability to sit on the jury in this case. No further questions were asked of Juror 929394 at that time, and he was ultimately one of the twelve jurors (with two alternates) selected to sit on the panel for Payne's trial.

On the fourth day of trial, however, the Commonwealth informed the trial court that it had just received additional information about Juror 929394 regarding the past prosecution of his foster child. The foster child had been acquitted (seven months before the commencement of Payne's trial) after being tried in the same division and before the same judge as in this case. After being acquitted, the foster child had returned to Juror 929394's and his wife's foster care. According to the Commonwealth, during the prior prosecution of the foster child, both Juror 929394 and his wife had contacted the prosecutor's office (and media outlets) to express displeasure with their holding and prosecuting the child "without any evidence" and had "basically said some pretty nasty stuff about us." Accordingly, the Commonwealth seriously doubted Juror 929394 would not be biased or prejudiced as a result of that prior experience. The Commonwealth also expressed concern with what it perceived as intentional minimization of the earlier case by Juror 929394 in his

5

responses during voir dire and on juror information forms. The trial judge also recalled that Juror 929394's wife had testified for the foster child and been the "point person" at his bond-reduction hearings. Consequently, the trial court struck Juror 929394 for cause.

Payne was convicted of first-degree sodomy, incest, first-degree sexual abuse, and being a first-degree persistent felony offender; and he was sentenced to 60 years in prison.

He now appeals to this Court as a matter of right. *See* Ky. Const. § 110(2)(b). Additional facts will be developed as necessary in the discussion below.

## II. Analysis

### A. The trial court did not err in declining to suppress the buccal-swab evidence.

Payne claims that the buccal-swab evidence should have been suppressed because it was obtained without a search warrant and without his voluntary consent. He primarily argues that the trial court clearly erred in finding that he voluntarily consented to the swab.

Our standard of review when reviewing suppression issues is two-fold. First, we will review findings of historical fact only for clear error, *Commonwealth v. Ousley*, 393 S.W.3d 15, 22 (Ky. 2013), and the factual findings of the trial court are conclusive so long as they are supported by substantial evidence, *see* RCr 9.78. Second, "[u]sing those facts, [we] then conduct[] a de novo review of the trial court's application of the law to those facts to determine whether the decision is correct as a matter of law."

*Commonwealth v. Jones*, 217 S.W.3d 190, 193 (Ky. 2006). To be clear, the decision under review is the voluntariness of Payne's consent to the swab, which is "determined by a preponderance of the evidence from the totality of all the circumstances." *Talbott v. Commonwealth*, 968 S.W.2d 76, 82 (Ky. 1998).

There was substantial evidence here to support the trial court's factual findings that Payne had not been intoxicated or unconscious when he was asked to consent to the buccal-swab search, had personally signed the waiver and consent forms, and had willingly opened his mouth to allow Detective Merrick to administer the swab. Although the video is less than clear, the trial court found Detective Merrick's testimony credible and relied upon it to fill in the blanks that the video did not answer. And our careful review of the video recording confirms that none of this testimony was contradicted by the video evidence, so we cannot say the trial court's findings were clear error. Because they were supported by substantial evidence, the trial court's historical findings of fact are conclusive.

But, as noted above, that does not end our inquiry because we must now apply the law to those facts to determine whether the trial court's conclusion that Payne's consent was voluntary was correct as a matter of law. We do so *de novo* without giving any deference to the trial court beyond its factual findings. *See Ousley*, 393 S.W.3d at 23.

"[U]sing a buccal swab on the inner tissues of a person's cheek in order to obtain DNA samples is a search." *Maryland v. King*, 133 S.Ct. 1958, 1968–69 (2013). Warrantless searches are presumptively unreasonable in violation of the Fourth and Fourteenth Amendments unless they fall under a recognized

7

exception to the warrant requirement. Consent is one of those exceptions, but to be valid, it must be voluntarily given. *See Bumper v. North Carolina*, 391 U.S. 543, 548 (1968). "The question of voluntariness turns on a careful scrutiny of all the surrounding circumstances in a specific case." *Cook v. Commonwealth*, 826 S.W.2d 329, 331 (Ky. 1992). "Courts must determine the voluntariness of consent based upon 'an objective evaluation of police conduct and not by the defendant's subjective perception of reality.'" *Payton v. Commonwealth*, 327 S.W.3d 468, 474 (Ky. 2010) (quoting *Cook*, 826 S.W.2d at 331).

The primary concern in determining "voluntariness" of consent to conduct a warrantless search is whether it was freely given or instead was the product of duress or coercion, either express or implied. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). There was no such coercion here. There is no evidence that Detective Merrick or any other officers made any threats, promises, or misrepresentations to induce consent. Additionally, there is no evidence that Detective Merrick asserted any claim of lawful authority to conduct the search—such as claiming to have a search warrant later determined to be invalid, *see Bumper v. North Carolina*, 391 U.S. at 548–49—to support Payne's contention that he merely acquiesced, rather than voluntarily consented, to the search. And to be sure, the trial court's findings that Payne was conscious, nonverbally responsive to questioning, and not intoxicated, which again we must accept as conclusive, directly refute his claim that he was incapacitated and unable to give consent.

Therefore, based on our review of the facts and surrounding circumstances, Payne's consent was voluntary. Thus, there was no error in the trial court's declining to suppress the buccal-swab evidence.[3]

## B. The trial court did not err in striking Juror 929394 for cause.

Payne also claims that the trial court erred in striking for cause Juror 929394 on the fourth day of trial.

Criminal Rule 9.36(1) requires trial courts to excuse a juror whenever there is a reasonable basis to believe he cannot render a fair and impartial verdict based on the evidence. Normally, for-cause challenges of jurors "must be made before the jury is sworn," but the trial court may "for good cause" allow a juror to be challenged after being accepted. RCr 9.36(3). A trial court's decision to strike a juror after the panel has already been seated is reviewed for abuse of discretion. *Nunley v. Commonwealth*, 393 S.W.3d 9, 14 (Ky. 2013). "And we have recently been 'emphasizing the importance of excusing doubtful jurors for cause.'" *Id.* (quoting *Ordway v. Commonwealth*, 391 S.W.3d 762, 781 (Ky. 2013)); *see also Basham v. Commonwealth*, 455 S.W.3d 415, 421 (Ky. 2014). To reiterate, "[s]triking a juror for cause simply will not constitute a reversible abuse of discretion absent evidence of systematic exclusion (e.g., on the basis of race or gender) that undermines the fairness of the entire jury process." *Wallace v. Commonwealth*, ___ S.W.3d ___, ___, 2015 WL 4967099, *6 (Ky. 2015).

---

[3] Because this Court discerns no error in the trial court concluding consent was voluntarily given, the issue whether the court erred in further finding suppression unnecessary under the inevitable discovery doctrine is moot.

There was ample reason for the trial court to believe that the juror was biased against the Commonwealth. The juror had misrepresented his prior involvement in the criminal justice system and, it turned out, had leveled public accusations of impropriety against the Commonwealth's Attorney's office in a high profile case. Even if it was a close call, in excusing Juror 929394, the trial court here complied with this Court's oft-repeated direction to err on the side of caution when the ability of a juror to be unbiased and impartial is questioned. And Payne has not argued that striking Juror 929394 was part of any systematic exclusion that might otherwise undermine the fundamental fairness of the jury process. There was no abuse of discretion.

### III. Conclusion

For the reasons set forth above, the judgment of conviction and sentence of the Jefferson Circuit Court is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Daniel T. Goyette, Louisville Metro Public Defender of Counsel
Cicely Jaracz Lambert, Assistant Appellate Defender
Office of the Louisville Metro Public Defender
Advocacy Plaza
717-719 West Jefferson Street
Louisville, Kentucky 40202


COUNSEL FOR APPELLEE:

Jack Conway
Attorney General

Thomas Allen Van De Rostyne
Assistant Attorney General
Office of Criminal Appeals
Office of the Attorney General
1024 Capital Center Drive
Frankfort, Kentucky 40601-8204