# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: AUGUST 24, 2023
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0135-MR

DAQUANTAE DELANE SMITH                                      APPELLANT

ON APPEAL FROM FAYETTE CIRCUIT COURT
V.                    HONORABLE LUCY VANMETER, JUDGE
NO. 19-CR-00377 & 20-CR-00097

COMMONWEALTH OF KENTUCKY                          APPELLEE

## MEMORANDUM OPINION OF THE COURT

## <u>AFFIRMING</u>

Daquantae Smith (Smith) was convicted in Fayette Circuit Court of two counts of being a convicted felon in possession of a handgun; two counts of assault in the fourth degree; two counts of resisting arrest; one count of criminal mischief in the third degree; and one count of disorderly conduct in the second degree. Smith was further found to be persistent felony offender (PFO) in the second degree. He now appeals his resulting twenty-year sentence as a matter of right.[1] Smith argues that the circuit court erred by granting the Commonwealth's motion to join two separate criminal indictments against him for trial, and by allowing Smith's charges of being a convicted felon in

---

[1] Ky. Const. § 110.

possession of a handgun to be tried alongside his charges for assault in the fourth degree, domestic violence. After review, we hold that Smith was not unduly prejudiced by the joinder of his separate indictments for trial, and that his counsel invited any alleged error in trying his felon in possession of a handgun charges concomitantly with his domestic violence assault charges. We accordingly affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

In January 2019, Paula Woolridge (Paula), had recently started a relationship with Smith. Paula was pregnant with his child, and although they were not living together, Smith was occasionally staying at Paula's apartment. On the night of January 5 into the morning hours of January 6, Smith was at Paula's apartment with his two young children. At around midnight that night, Smith began going through Paula's phone and accusing her of cheating on him while questioning the unborn child's paternity. He became angry and hit Paula in the face with a closed fist multiple times, resulting in Paula having a busted lip and a bruised and swollen eye. Smith also kicked Paula in the stomach and told her he would kick the baby out of her and threw several items, including a lit candle, at her. Smith's outbursts and abuses continued intermittently from midnight to sometime around 8 a.m. when Smith went to sleep. Paula retrieved her phone and escaped from the ground floor apartment through a window. Paula called a friend, who picked her up and convinced Paula to call the police.

2

When officers arrived at the apartment complex, they spoke with Paula in the parking lot. She explained what happened the night before and further told the officers that Smith, a convicted felon, had guns in her apartment. When the officers walked into Paula's apartment, they saw Smith on a couch that was partially blocking the front door. They attempted to speak with him about the situation, but he refused to answer their questions. When the officers informed him that he was under arrest and stood him up, the officers saw a handgun on the couch where he had been sitting. Smith resisted the officers' attempt to arrest him, but they were ultimately able to subdue and handcuff him after a brief struggle that began in the apartment and ended in the apartment building's breezeway. After Smith was removed from the scene, Paula escorted the officers to a bedroom in the apartment and showed them three additional guns—two handguns and a shotgun—under a mattress. Three of the guns found in the apartment had previously been reported stolen.

In March 2019, Smith was indicted in Fayette Circuit Court, Third Division, for the events that occurred on January 6 in case number 19-CR-377. Initially, the charges in that indictment were the following counts:

Count 1: Convicted felon in possession of a handgun

Count 2: Convicted felon in possession of a firearm

Counts 3-5: Receiving stolen property, firearm

Count 6: Assault in the fourth degree, domestic violence, third or greater offense within five years

Count 7: Resisting arrest

Count 8: Persistent felony offender in the second degree

3

On April 19, a month after Smith was indicted, he was released on bond. In the months that followed, Smith and Paula continued to see each other, and on November 18, 2019, a second domestic violence incident occurred between them. Paula decided she wanted to end her relationship with Smith and went to his apartment with her three small children to retrieve her belongings. When Smith realized that Paula intended to leave him, he became angry and would not allow her to leave the apartment. As she was trying to leave, he slammed the front door on her forearm and tried to physically prevent her from leaving. She was eventually able to escape to a neighboring apartment and call 911. By the time police arrived on scene minutes later, Smith was gone, and they were unable to arrest him that day. No firearms were found in Smith's apartment that day, but the officers recovered a gun clip that was lying in a closet in plain view.

On November 25, the police went back to Smith's apartment to serve the arrest warrant issued in relation to the November 18 incident. When the officers knocked on his door, Smith came to the door in a t-shirt, nude from the waist down. He told the officers he needed to put pants on, so the officers followed him into the apartment. As Smith was walking towards the back of the apartment, he went into a bedroom and tried to quickly shut the door. Before he could shut the door, the officers saw a handgun on the bed in plain sight. The officers prevented him from shutting the door and told him that he was under arrest. After a struggle, the officers were able to get Smith into handcuffs and put pants on him. Smith resisted the officers the entire time

4

they walked him to a cruiser and at one point "went dead weight" on them, requiring the officers to carry him. During the time the officers were moving Smith from his apartment to the cruiser, he began screaming for his mother and "causing a scene" by telling the officers they had no right to arrest him. Several people from the apartment complex started to form a crowd outside the complex in response to the commotion. As they were placing Smith into the cruiser, he threw his head back into the face of Officer James Chips (Officer Chips), which busted his lip.

While sitting in the back of the cruiser, Smith was able to get his handcuffed hands from behind his back to the front of his body. He then began beating and kicking the cruiser's window with such force the officers were afraid he was going to break it. They therefore removed him from the cruiser so they could place his ankles in shackles and re-cuff him behind his back before transporting him. After they placed shackles on him, they removed his handcuffs. Smith again resisted the officers and bit Officer Chips on the left forearm during the struggle.

Three months later, in February 2020, Smith was indicted in relation to the November 18 and November 25 incidents in Fayette Circuit Court, Eighth Division, in case number 20-CR-97. The charges in that indictment were as follows:

Count 1: Convicted felon in possession of a handgun

Count 2: Assault in the third degree of a police officer

Count 3: Criminal mischief in the second degree

5

Count 4: Resisting arrest

Count 5: Disorderly conduct in the first degree

Count 6: Assault in the fourth degree, domestic violence, third or greater offense within five years

Count 7: Unlawful imprisonment in the second degree

Count 8: Persistent felony offender in the second degree

Two days after the 20-CR-97 indictment, the Commonwealth filed a combined motion to transfer 20-CR-97 from the Eighth Division to the Third Division of Fayette Circuit Court and to join 20-CR-97 with 19-CR-377 for trial. Smith's defense counsel filed a response objecting to the joinder. During a hearing on the Commonwealth's motion, it argued that the indictments could be properly joined because the incidents that occurred on January 6, 2019, and November 18, 2019, respectively, were domestic violence episodes involving the same victim that occurred within a year of one another. And, that the charges that stemmed from Smith's conduct on November 25, 2019, had a sufficient nexus to the November 18 incident because they occurred while the police were attempting to serve an arrest warrant in connection with the November 18 incident. Defense counsel argued that the January 6 incident should be tried separately from the two November incidents, primarily arguing that the two domestic violence episodes were distinguishable on their facts. Counsel argued that they occurred at two different locations, that different injuries were inflicted, and that they occurred eleven months apart from one another.

6

Following the hearing on the Commonwealth's motion and supplemental briefing from both parties, the circuit court granted the Commonwealth's motion to transfer and join. The court found that the offenses that occurred on November 18 and November 25 were properly joined under 20-CR-97 because there was a sufficient nexus and logical relationship between them. Specifically, the November 25 offenses occurred while officers were serving an arrest warrant for the November 18 offenses. In addition, Smith's actions in fleeing the scene on November 18 and resisting arrest on November 25 were relevant to demonstrate his consciousness of guilt. The court further found that 19-CR-377 and 20-CR-97 could be properly joined for trial because both cases involved offenses of the same or similar character and were committed against the same victim. The court found that Smith would not be unduly prejudiced by joining the two indictments because evidence of the January 6 assault would be admissible during a trial for the November 18 assault pursuant to KRE[2] 404(b). Although the court acknowledged that it could not divine what Smith's defense would be prior to trial, it agreed with the Commonwealth's contention that evidence of the January 6 assault would be relevant to establish motive, opportunity, intent, plan, or absence of mistake or accident regarding the November 18 assault.

Subsequently, the Commonwealth moved to amend or sever several charges from 19-CR-377 and 20-CR-97 as follows: (1) amend both fourth-

---

[2] Kentucky Rule of Evidence.

degree assault counts to no longer include the enhancement of being a third offense or greater within five years, making both of those counts a fourth-degree assault under KRS 508.030 rather than KRS 508.032;[3] (2) sever Counts 3-5, receiving stolen property, from 19-CR-377; (3) sever Count 2, third-degree assault (police officer), from 20-CR-97; (4) amend Count 3 from 20-CR-97, second-degree criminal mischief, to third-degree criminal mischief; and (5) amend Count 5 from 20-CR-97, first-degree disorderly conduct, to second-degree disorderly conduct. There being no objection from the defense, the trial court accepted the modifications to the original indictments.

Significantly, because of the foregoing changes the only felony offenses remaining in either indictment were the three counts of being a felon in possession of a handgun/firearm; all of the remaining charges were misdemeanors. During a pre-trial discussion between the trial court and parties regarding how the trial would be conducted, the following exchange occurred:

> **Court:** But in the first phase when we're having a trial on the assault fourth and resisting arrest, the convicted felon in possession of a firearm and a handgun, that's a separate phase.
>
> **CW:** [4] Well, I'm proposing to try the misdemeanors with the felon in possession and I don't think [defense counsel] has an objection to that. I told him that it's his decision.
>
> **Court:** [Defense counsel]?
>
> **Defense:** We don't disagree.

---

[3] The Commonwealth acknowledged that it made an error in making the calculations required to enhance this offense under KRS 508.032(2).

[4] Counsel for the Commonwealth.

**Court:** Okay, so the jury's going to know he's a convicted felon, and everybody is okay with that?

**Defense:** Well, I think a part of the guilt phase for being a convicted felon in possession of a handgun is the conviction. Because these assaults are misdemeanors, he's already served well beyond the maximum he could ever get for a misdemeanor, so I don't think there is any prejudice or harm in that regard for a jury to potentially max him out on a misdemeanor.

**Court:** I see, so the only real punishment he could get in this case is on the convicted felon in possession of a handgun.

**Defense:** Yes.

**Court:** So it can't harm him on the misdemeanors.

**Defense:** I don't believe so.

With the foregoing changes made to the original indictments, Smith's trial proceeded on the following counts: **Count 1:** Convicted felon in possession of a handgun (19-CR-377); **Count 2:** Convicted felon in possession of a firearm (19-CR-377); **Count 3:** Convicted felon in possession of a firearm (20-CR-97); **Count 4:** Fourth-degree assault (19-CR-377); **Count 5:** Fourth-degree assault (20-CR-97); **Count 6:** Second-degree unlawful imprisonment (20-CR-97); **Count 7:** Resisting arrest (19-CR-377); **Count 8:** Resisting arrest (20-CR-377); **Count 9:** Third-degree criminal mischief (20-CR-97); **Count 10:** Second-degree disorderly conduct (20-CR-97); and **Count 11:** Second-degree PFO. Because Smith requested that the charges of being a felon in possession of a handgun/firearm be tried during the guilt phase of his trial, the jury was informed that he was a convicted felon but was not told what specific charges he was previously convicted of.

9

Smith's defense primarily focused on refuting the counts of being a felon in possession of a handgun/firearm. He claimed that none of the guns found in Paula's apartment on January 6 were his. He further argued that Paula did not escape through a window that day, but rather went out the front door after planting the pistol found on the couch beneath Smith. The defense highlighted that the guns were not tested for DNA, and no useable fingerprints were recovered from them. Counsel did not provide an explanation as to how Paula could have planted the gun found in Smith's apartment on November 25, as she was not present in the apartment that day.

As for the two counts of assault in the fourth degree, the defense conceded that the jury would find Smith guilty of the January 6 incident; the Commonwealth played an arresting officer's body camera footage of Smith admitting to causing Paula's injuries on that date. However, the defense asserted that Paula lied about the November 18 assault, noting that the paramedic that examined her noted no abnormalities to her arm.

The jury ultimately found Smith guilty on all counts except for Count 2 (convicted felon in possession of a firearm under 19-CR-377) and Count 6 (unlawful imprisonment under 20-CR-97). The jury recommended the minimum five-year sentence for both Count 1, felon in possession of a handgun, and Count 3, felon in possession of a firearm. Following the guilt phase, the jury found Smith guilty of being a second-degree PFO which enhanced his sentences for Count 1 and Count 3 to ten years each. In

accordance with KRS 533.060(3), the court ruled that those sentences had to run consecutively for a total of twenty years.[5]

Additional facts are discussed below as necessary.

## II. ANALYSIS

Smith raises two alleged errors before this Court. He first argues that the trial court erred by granting the Commonwealth's motion to join 19-CR-377 and 20-CR-97 for trial. Second, he asserts that the trial court erred by not *sua sponte* severing his charges of being a convicted felon in possession of a handgun and firearm from his other charges for the purposes of trial. Finding no error, we affirm.

### A. The trial court did not abuse its discretion by granting the Commonwealth's motion to join 19-CR-377 and 20-CR-97 for trial.

Smith first argues that the trial court erred by granting the Commonwealth's motion to join 19-CR-377 and 20-CR-97 for trial.[6] Trial courts have broad discretion when ruling on a motion to join separate indictments for the purposes of trial, and this Court will not disturb such a ruling absent an abuse of discretion.[7] "The test for abuse of discretion is

---

[5] The jury's recommendation for the remaining misdemeanor convictions were as follows: Count 4: twelve months, Count 5: ninety days, Count 7: ninety days, Count 8: six months, Count 9: $250 fine, and Count 10: one day.

[6] This issue was preserved for our review by defense counsel's written and verbal objections to the Commonwealth's motion. *See* Kentucky Rule of Criminal Procedure (RCr) 9.22.

[7] *See, e.g., Garrett v. Commonwealth*, 534 S.W.3d 217, 223 (Ky. 2017).

11

whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles."[8]

The statutes that govern this issue are RCr 9.12, RCr 6.18, and RCr 8.31. RCr 9.12 provides that a court may order two or more indictments to be tried together "if the offenses . . . could have been joined in a single indictment." In turn, RCr 6.18 states that two or more offenses "may be charged in the same indictment . . . if the offenses are of the same or similar character or are based on the same acts or transactions connected together or constituting parts of a common scheme or plan." Additionally, this Court has stated that

> to justify joining separate offenses in a single trial, there must be a sufficient nexus between or among them. The required nexus must arise from a logical relationship between the crimes, some indication that they arose one from the other or otherwise in the course of a single act or transaction, or that they both arose as parts of a common scheme or plan.[9]

RCr 8.31 is the antithesis of RCr 9.12 and RCr 6.18 in that it mandates severance of charges that are otherwise properly joined "[i]f it appears that a defendant or the Commonwealth is or will be prejudiced by a joinder of offenses[.]" In this vein,

> [b]ecause a certain degree of prejudice is inherent in the joinder of offenses, as it is in any indictment, this Court has explained that the "prejudice" calling for severance or other relief under [RCr 8.31][10] is "undue prejudice," i.e., prejudice that goes beyond the

---

[8] *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999).

[9] *Cherry v. Commonwealth*, 458 S.W.3d 787, 794 (Ky. 2015) (internal citations and quotation marks omitted).

[10] RCr 8.31 was formerly codified as RCr 9.16.

12

inherent prejudice to that which is unnecessary and unreasonable.[11]

Smith argues before this Court that the two indictments should not have been tried together because the January 6 and November 18 assaults were not of the same or similar character. In doing so, he attempts to distinguish the two assaults on their facts. He argues that the motive for the January 6 attack was a suspicion that Paula was cheating on him, while the November 18 attack was motivated by Paula's desire to leave the relationship; that the attacks took place almost eleven months apart; and that the injuries inflicted to Paula were different.

We disagree and hold that the circuit court did not abuse its discretion by finding that the offenses committed on January 6 and November 18 were properly joined under RCr 6.18 and RCr 9.12. The January 6 and November 18 assaults were both domestic violence[12] assaults committed against the same victim, within a residence, and in the presence of small children. Additionally, during both assaults Smith attempted to prevent Paula from leaving, and following both assaults Paula fled to a different location before calling for help.

---

[11] *Whaley v. Commonwealth*, 567 S.W.3d 576, 583 (Ky. 2019) (quoting *Peacher v. Commonwealth*, 391 S.W.3d 821, 838 (Ky. 2013)).

[12] KRS 403.720(2)(a) defines domestic violence and abuse, in relevant part, as "[p]hysical injury, serious physical injury or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, strangulation, or assault between family members or members of an unmarried couple[.]"

13

Notwithstanding our agreement with the trial court, even assuming arguendo that the trial court abused its discretion by joining Smith's separate indictments for trial, he is not entitled to relief absent a showing that he was unduly prejudiced by said joinder.[13] "The primary test for determining if the consolidation of different crimes for a single trial creates undue prejudice is whether evidence necessary to prove each offense would have been admissible in a separate trial of the other."[14] KRE 404(b) is the guiding statute for this inquiry, though this Court has previously stated that a failure to sever in violation of KRE 404(b) may still be considered harmless error if the evidence of guilt is otherwise overwhelming.[15]

KRE 404(b) directs that evidence of a defendant's other crimes, wrongs, or acts are inadmissible to prove a defendant's character "in order to show action in conformity therewith." However, evidence of other crimes, wrongs, or acts may be admissible

---

[13] *Montgomery v. Commonwealth*, 320 S.W.3d 28, 35–36 (Ky. 2010) ("Even assuming the trial court abused its discretion by joining those offenses, Montgomery is not entitled to relief unless he was prejudiced by the improper joinder.").

[14] *Elam v. Commonwealth*, 500 S.W.3d 818, 824 (Ky. 2016).

[15] *Peacher*, 391 S.W.3d at 839 ("[W]hile we have focused on mutual admissibility as an important factor in the prejudice analysis, mutual admissibility is not, by itself, determinative. *United States v. Cardwell*, 433 F.3d 378 (4th Cir.2005). Where there is a lack of mutual admissibility, it could be that the trial court's having admonished the jury to compartmentalize the evidence sufficed to neutralize the KRE 404(b) concerns, *id.*, or, even absent such an admonition, it could be that the failure to sever, in effect a KRE 404(b) error, was harmless under our harmless error standards. *See Wiley v. Commonwealth*, 348 S.W.3d 570 (Ky.2010) (finding KRE 404(b) error harmless in light of overwhelming admissible evidence supporting the conviction)[.]").

14

(1) If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; or

(2) If so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party.[16]

With this standard in mind, we hold that the trial court did not abuse its discretion by finding that evidence of the January 6 assault would have been admissible during a trial for the November 18 assault. This Court has stated numerous times that "evidence of similar acts perpetrated against the same victim are almost always admissible" under KRE 404(b).[17] Moreover, at trial Smith conceded he was guilty of the January 6 assault but argued that Paula fabricated the November 18 assault. Evidence of the January 6 assault would have therefore been admissible at a trial for the November 18 assault to refute Smith's defense that Paula lied about it.

As for the weapons charges, Smith denied owning any of the guns found in Paula's apartment on January 6 and argued to the jury that she planted them to frame him. Consequently, evidence that police recovered a gun from his apartment on November 25 would have been admissible at a trial for the January 6 weapons offenses: Paula was not present in Smith's apartment on November 25 and the gun was on his bed in plain sight. Evidence of the gun found on November 25 was therefore relevant and probative to prove that Paula

---

[16] KRE 404(b)(1)-(2).

[17] *See, e.g., Harp v. Commonwealth,* 266 S.W.3d 813, 822 (Ky. 2008).

did not frame Smith on January 6 and that the guns found on both dates did in fact belong to him.

Tellingly, Smith's argument to this Court fails to articulate how the joinder of his indictments resulted in undue prejudice to him. We also note that the jury found him not guilty of one count of being a convicted felon in possession of a firearm and one count of unlawful imprisonment. And, while the jury found Smith guilty of the two remaining weapons offenses, it initially recommended the minimum sentence of five years for each of those counts. Based on the foregoing, we hold that no undue prejudice resulted from joining 19-CR-377 and 20-CR-97 and affirm.

## B. Smith invited any error committed in trying his charges of felon in possession of a handgun and felon in possession of a firearm alongside his domestic violence assault charges.

For his second assertion of error, Smith contends that the trial court reversibly erred by allowing his three charges of being a convicted felon in possession of a handgun/firearm to be tried in a single guilt phase alongside his two charges for assault in the fourth degree, domestic violence. He argues under *Wallace v. Commonwealth*[18] and *Hubbard v. Commonwealth*,[19] that the trial court was required to try his weapons charges separately. He contends that even though his trial counsel requested to try the weapons charges in the same guilt phase as his assault charges, the trial court was required by RCr 8.31 to *sua sponte* reject defense counsel's decision and try the weapons

---

[18] 478 S.W.3d 291 (Ky. 2015).

[19] 633 S.W.2d 67 (Ky. 1982).

16

charges separately. While the respective holdings in *Hubbard* and *Wallace* remain sound, we hold that under the particular facts of this case Smith's counsel waived his ability to raise this issue on appeal by inviting this alleged error.

In *Hubbard*, the defendant was charged with burglary in the third degree, theft by unlawful taking, felon in possession of a handgun, and being a first-degree PFO.[20] Prior to trial, the defendant moved to have the charge of felon in possession of a handgun severed from the other charges, but the trial court denied the motion.[21] During the trial's guilt phase, the Commonwealth presented evidence that the defendant had been previously convicted of third-degree burglary twice.[22] He was found guilty on all charges except for the charge of being a felon in possession of a handgun.[23] This Court reversed and remanded for a new trial.[24] It reasoned that

> [RCr 8.31] provides that if it appears that either the Commonwealth or the defendant will be prejudiced by a joint trial of separate offenses they shall be tried separately. This case is a perfect example of when a severance should be granted. The two-stage proceeding in persistent felony-offender cases was designed for the specific purpose of obviating the prejudice that necessarily results from a jury's knowledge of previous convictions while it is weighing the guilt or innocence of a defendant on another charge. Cf. KRS 532.080(1), enacted in 1974. Such evidence is no longer relevant or competent during the guilt phase of a bifurcated trial unless, of course, it should become relevant for impeachment purposes. Here the jury acquitted Hubbard of possessing the gun,

---

[20] *Id.* at 67.

[21] *Id.* at 68

[22] *Id.*

[23] *Id.* at 67.

[24] *Id.* at 68.

but in considering his guilt or innocence of the burglary and theft the jurors had been made aware of his previous record.[25]

Several decades after *Hubbard,* this Court rendered *Wallace.* In that case, the defendant used a handgun during the commission of a series of robberies and was charged with five counts of first-degree robbery and one count of being a felon in possession of a handgun.[26] The trial court entered a pre-trial order severing the felon in possession of a handgun charge from the other charges.[27] But, instead of holding a separate trial for the handgun offense, the trial court opted to "trifurcate" the trial.[28] During the first phase, the jury considered evidence solely concerning the robbery charges.[29] In the second phase it heard evidence establishing that the defendant was a convicted felon in possession of a handgun, and the final step was a consolidated sentencing phase.[30]

On appeal, the defendant argued under *Hubbard* and RCr 8.31 that the trial court abused its discretion by not ordering a separate trial for the felon in possession of a handgun charge.[31] As a matter of first impression, this Court approved of the trifurcated proceedings.[32] The *Wallace* Court acknowledged

---

[25] *Id.*

[26] *Id.* at 293-94.

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.* at 302.

[32] *Id.*

that a defendant would be prejudiced if, during the second phase of a trifurcated trial, the jury heard evidence of a felon in possession of a handgun charge that was not mutually admissible during a trial for the charges adjudicated during the first phase.[33]  However, because Wallace had used a handgun during the commission of the underlying offenses, that evidence was inextricably intertwined with the evidence of the robberies and no prejudice resulted.[34]  The Court accordingly held that

> trying the robbery charges and severed charge of possession of a handgun by a convicted felon in one trial with a bifurcated guilt phase followed by a consolidated penalty phase is not an *inherently* inappropriate means of complying with the purposes and requirements of Criminal Rule [8.31] and *Hubbard*[.]  This procedure is only inappropriate if separate trials are necessarily required to avoid prejudice reciprocating between otherwise properly joined separate counts.  Clearly, when the handgun is used in the underlying offense, there can be no such reciprocation.[35]

To summarize, *Hubbard* held that RCr 8.31 required a charge of being a felon in possession of a handgun/firearm to be severed from other criminal charges.  And *Wallace* held that a severed felon in possession of a handgun/firearm charge could be tried using a trifurcated trial instead of a separate trial if evidence of the handgun/firearm offense presented during the second phase would have been admissible during a trial on the offenses adjudicated in the first phase.  *Wallace* is therefore inapplicable: Smith's trial

---

[33] *Id.* at 304.

[34] *Id.*

[35] *Id.* at 306.

was not trifurcated and the question before us is not whether the trial court abused its discretion by holding a trifurcated trial.

Instead, the issue is whether this alleged error is properly before us based on the equally well-established rule that "one cannot commit to an act. . . and later complain on appeal that the trial court erred to his detriment," or, stated differently, that "[a] defendant cannot complain on appeal of alleged errors invited or induced by himself[.]"[36] *Hubbard* is accordingly not dispositive either because the defendant in that case requested that the court sever the count of being a felon in possession of a handgun and argued that he would suffer prejudice if his motion was denied.[37]

In contrast, Smith's trial counsel without question invited the alleged error that Smith now argues entitles him to reversal and a new trial. During a pre-trial discussion between the court and the parties regarding how the trial would proceed, the trial court stated its intention to try the three charges of being a felon in possession of a handgun/firearm using a bifurcated guilt phase like the one approved of by *Wallace*. The Commonwealth replied that it was proposing to try all the counts, except the PFO, in a single guilt phase but conceded it would be defense counsel's decision. Defense counsel not only

---

[36] *Gray v. Commonwealth*, 203 S.W.3d 679 (Ky. 2006). *See also Tackett v. Commonwealth*, 445 S.W.3d 20 (Ky. 2014) ("[A] party cannot ask a trial court to do something and, when the court does it, complain on appeal that the court erred."); *Quisenberry v. Commonwealth*, 336 S.W.3d 19 (Ky. 2011) ("Generally, a party is estopped from asserting an invited error on appeal.").

[37] *Hubbard*, 633 S.W.2d at 68.

stated he had no objection, but then stated twice that his client would not be

prejudiced by a single guilt phase trial:

> **Court:** Okay, so the jury's going to know he's a convicted felon, and everybody is okay with that?

> **Defense:** Well I think a part of the guilt phase for being a convicted felon in possession of a handgun is the conviction. Because these assaults are misdemeanors, he's already served well beyond the maximum he could ever get for a misdemeanor, so I don't think there is any prejudice or harm in that regard for a jury to potentially max him out on a misdemeanor.

> **Court:** I see, so the only real punishment he could get in this case is on the convicted felon in possession of a handgun.

> **Defense:** Yes.

> **Court:** So it can't harm him on the misdemeanors.

> **Defense:** I don't believe so.

"Invited errors that amount to a waiver, i.e., invitations that reflect the party's

knowing relinquishment of a right, are not subject to appellate review."[38]

Smith's counsel rejected the trial court's suggestion to try the weapons charges

separately. In addition, the defense used the evidence that Smith was a

convicted felon to bolster its defense that Paula framed him. Smith argued that

Paula knew Smith was not allowed to have handguns or firearms and therefore

lied to the police and told them that the guns in her apartment were his so that

he would be arrested. Based on the foregoing, we hold that Smith invited the

alleged error that the trial court erred by trying his felon in possession of a

---

[38] *Mullins v. Commonwealth*, 350 S.W.3d 434 (Ky. 2011).

21

handgun/firearm charges alongside his two charges of fourth-degree assault. The issue is therefore not properly before us, and we decline to review it.[39]

### III. CONCLUSION

For the foregoing reasons, we affirm.

Bisig, Conley, Keller, Lambert, Nickell and Thompson, JJ., sitting. All concur. VanMeter, C.J., not sitting.

COUNSEL FOR APPELLANT:

Molly Mattingly
Kathleen Kallaher Schmidt
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Daniel Jay Cameron
Attorney General of Kentucky

Todd Dryden Ferguson
Robert Lee Baldridge
Perry Thomas Ryan
Assistant Attorney General

---

[39] Because this error was invited, palpable error review under RCr 10.26 is not appropriate. *See id.* at 439.

22